**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

                                              Case No. 09-20503
v.                                                Hon. Lawrence P. Zatkoff

ERVIN TOLIVER,

    Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on January 27, 2010

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendant's motion to suppress evidence and/or dismiss [dkt 12]. The Government has responded to the motion. On January 21, 2010, the Court conducted an evidentiary hearing, at which the Court received testimony from Ypsilanti Police officers Zachary Allen and Anthony Schembri. The Court has carefully reviewed the parties' briefs and exhibits, the testimony and argument presented at the January 21, 2010, evidentiary hearing, the DVD-video of the traffic stop, and the police report submitted to the Court following the evidentiary hearing. The Court has also reviewed *in camera* information disclosed by the Government to Defendant pursuant to *Giglio v. United States*, 405 U.S. 150 (1972). For the following reasons, Defendant's motion is DENIED.

**II. BACKGROUND**

On September 16, 2009, Officer Allen, patrolling alone, turned north at the intersection of

S. Grove St. and Maus St. in Ypsilanti, Michigan. Defendant's vehicle, facing south, was stopped at the traffic signal of that intersection. Officer Allen was familiar with Defendant from several prior encounters, and he immediately recognized Defendant. Additionally, Officer Allen knew that Defendant was suspected of narcotics trafficking, and he had information that Defendant carried a firearm.

Officer Allen noticed that Defendant was not wearing his safety belt as required by Michigan law. In response, Officer Allen performed a U-turn maneuver in order to position his vehicle behind Defendant's vehicle. Officer Allen proceeded to follow Defendant, and while doing so, he input Defendant's name to the patrol car's computer system. The system informed Officer Allen that Defendant had an outstanding warrant from the 36th District Court in Detroit, Michigan, for a traffic violation. Officer Allen then effectuated a traffic stop.

While approaching Defendant's vehicle, Officer Allen spotted an unusually large number of pine-scented air fresheners in the vehicle, which he knew to be consistent with narcotics trafficking. He also observed that Defendant was acting nervous and anxious, and that Defendant was sweating profusely even though it was not an abnormally warm day. Officer Allen testified that Defendant's behavior was inconsistent with Defendant's mannerisms in previous encounters.

Soon thereafter, Officer Schembri arrived as backup support. Neither officer could recall whether Officer Allen specifically requested backup support, or whether Officer Schembri responded to the general radio report of the traffic stop. Officer Schembri is assigned to a K9 unit and always travels with his partner, Buky. Officer Allen briefed Officer Schembri on the details of the situation upon his arrival.

Officer Allen requested that Defendant exit the vehicle, and Defendant was detained on the

outstanding warrant. Officer Allen acknowledged that he returned to Defendant's vehicle in order to stop the engine, but he stated that he did not perform any type of search at that time. Officer Allen testified that the engine was stopped so that the exhaust fumes would not interfere with the canine sniff. Officer Allen also affirmed that he briefly examined the rear of the vehicle to determine whether the bumper was loose.[1]

After Defendant exited, Officer Schembri proceeded to lead Buky around the vehicle for a sniff test. Officer Schembri testified that Buky made positive identifications at both the driver and passenger doors, and that Buky gave his final response by sitting near the trunk of the car. These actions indicated to Officer Schembri that Buky had identified the presence of narcotics in the vehicle.

Officer Schembri then began to search the car for narcotics. He found residue that he believed to be cocaine on the floorboard between the driver's door and the driver's seat. A field test confirmed that the substance was cocaine. Officer Schembri apprised Defendant of this information and indicated that he intended to continue the search. Defendant volunteered that additional contraband was located in the armrest. Officer Schembri searched the armrest and found additional quantities of suspected crack cocaine. Defendant was then placed under arrest for possession of cocaine.

Following Defendant's arrest, his vehicle was towed with the intent of forfeiture, ultimately reaching the Ypsilanti Fire Department. At that point, Officer Schembri conducted a routine

---

[1]Defendant's examination at the hearing insinuated that Officer Allen attempted to influence the sniff test by rubbing some type of material on the bumper. This argument is not supported by the testimony or by the DVD-video of the encounter. Additionally, such argument does not account for Buky's positive alerts at both the driver and passenger doors.

inventory search of the vehicle. Meanwhile, Officer Allen received tips suggesting that he search the engine compartment of the vehicle for a firearm. By the time Officer Allen relayed this information to Officer Schembri, a .38 caliber revolver had been discovered near the vehicle's battery compartment.

Defendant was subsequently indicted for Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1) and Possession with Intent to Distribute Crack Cocaine (5 grams or more) in violation of 21 U.S.C. § 841(a)(1). Defendant filed the current motion seeking to suppress the evidence seized during and after the traffic stop.

### III. ANALYSIS

In his motion, Defendant alleges that his vehicle was searched in violation of the Fourth Amendment.[2] He requests that the Court either suppress the illegally-obtained evidence or dismiss the indictment.

**A. Initial Stop**

At the evidentiary hearing, Defendant challenged the validity of the traffic stop. Defendant argues that his safety belt was fastened when Officer Allen approached his vehicle. Defendant contends that all evidence should be suppressed because the purported seat-belt violation was a pretext to search him for narcotics.

"Police may briefly stop an individual for investigation if they have a 'reasonable suspicion' that the individual has committed a crime." *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 813 (6th Cir. 1999). This court has questioned whether a civil traffic infraction, such

---

[2]At the evidentiary hearing, Defendant also argued that Officer Allen illegally searched his home. The Court will not address this argument in this opinion, as Defendant has not identified any evidence that was illegally seized from the home.

as the present seat-belt violation, requires the officer to have "probable cause," rather than a "reasonable suspicion," that the violation has occurred. *See United States v. Campbell*, 609 F. Supp. 2d 674, 686 n.12 (E.D. Mich. 2009) (discussing conflicting Sixth Circuit case law).  The *Campbell* court avoided the issue by finding that probable cause existed for the traffic stop.

Officer Allen testified that he turned north at an intersection at which Defendant's vehicle faced south.  This would have allowed Officer Allen an excellent vantage point from which to judge whether Defendant did or did not have his safety belt fastened, as Officer Allen's driver-side window would have directly faced Defendant's driver-side window.  Notably, Defendant did not represent, in his brief or at oral argument, that he was wearing his safety belt when Officer Allen passed his vehicle.  Instead, Defendant insists only that he was wearing his safety belt at the time Officer Allen approached his car following the traffic stop.

Officer Allen testified that it is commonplace for drivers to fasten their safety belts (or attempt to) after being signaled for a traffic stop.  According to Officer Allen's testimony, he trailed Defendant's vehicle for two streets before initiating the stop.  While Officer Allen testified that he did not directly observe Defendant fastening his safety belt, Defendant had ample opportunity to do so.  Defendant responds only that Officer Allen failed to mention in his report that Defendant's belt was fastened when he approached the vehicle.

Assuming that the probable-cause standard (*i.e.*, the more stringent standard) applies to a civil traffic violation, the Court finds that Officer Allen had probable cause to believe that Defendant violated a Michigan traffic law—namely, Mich. Comp. Laws § 257.710e, which requires that a driver of a motor vehicle wear a properly-fastened safety belt.  *See Campbell*, 609 F. Supp. 2d at 686 ("When a police officer observes a traffic violation—however minor—he has probable cause to stop

the vehicle."). The Court finds Officer Allen's testimony credible. Further, the Court finds it material that Defendant never asserted that his safety belt was fastened at the intersection. Finally, if Defendant was, in fact, wearing his safety belt, that reasonable mistake of fact does not preclude a finding of probable cause. *See United States v. Dowthard*, 500 F.3d 567, 569 (7th Cir. 2007); *United States v. Maxwell*, 141 Fed. Appx. 878, 881 (11th Cir. 2005). Thus, the traffic stop did not violate Defendant's constitutional rights.

Finally, to the extent that Defendant contends that the intended purpose of the traffic stop was to search for contraband, such argument fails. An officer's subjective intent is irrelevant so long as probable cause existed for the cited violation. *See Whren v. United States*, 517 U.S. 806 (1996); *see also United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002) ("A police officer may effect a traffic stop of any motorist for any traffic infraction, even if the officer's true motive is to detect more extensive criminal conduct."). Defendant was stopped for a traffic violation; therefore, Officer Allen's ulterior motives, if any, are immaterial.

## B.  Suppression of Narcotics

Defendant next argues that the search of his vehicle was unconstitutional under *Arizona v. Gant*, __ U.S. ___, 129 S. Ct. 1710 (2009), because he was detained prior to the search of the passenger compartment of his vehicle. Defendant seeks to suppress the narcotics uncovered during that search.

In *Gant*, the Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id*. at 1723. If those factors are not present, "a search of an arrestee's vehicle will be unreasonable

unless police obtain a warrant or show that another exception to the warrant requirement applies." *Id.* at 1723–24. This holding abrogated *New York v. Belton*, 453 U.S. 454 (1981), which had permitted the unbridled search of the passenger compartment of a vehicle incident to arrest.

While *Gant* narrowed the *Belton* incident-to-arrest exception for automobile searches, the Government relies on an alternative exception to the warrant requirement. If an officer has probable cause to believe that an automobile contains evidence of criminal activity, he or she may search any area of the vehicle where such evidence might be found without first securing a warrant. *See United States v. Ross*, 456 U.S. 798, 820–21 (1982). *Gant* did not modify or overrule *Ross*. *See Gant*, 129 S. Ct. at 1721; *see also United States v. Stotler*, __ F.3d ___, 2010 WL 114928, at * 4 (7th Cir. Jan 14, 2010); *United States v. Steele*, No. 09-10019, 2009 WL 4039444, at *2 (5th Cir. Nov. 23, 2009). Therefore, if the officers had probable cause to believe that Defendant's vehicle contained narcotics, the search passes constitutional muster.

Here, Defendant's vehicle was not searched until Buky's sniff test indicated the presence of illegal drugs. "Generally speaking, 'a positive indication by a properly-trained dog is sufficient to establish probable cause for the presence of a controlled substance.'" *United States v. Wickersham*, Nos. 08-3951, 08-3952, 2009 WL 2610816, at *4 (6th Cir. Aug. 26, 2009) (citing *United States v. Torres-Ramos*, 536 F.3d 542, 554 (6th Cir. 2008)). To support this finding, "the training and credibility of the dog must be established." *United States v. Hill*, 195 F.3d 258, 273–74 (6th Cir. 1999).

The Government has presented certification indicating that Buky has completed six different narcotics-detection programs. *See* Gov.'s Ex. A. Officer Schembri further elaborated on his and Buky's training at the evidentiary hearing. Defendant did not challenge Buky's certification or

7

training in his brief or at the evidentiary hearing. Therefore, the Court finds that the Government has established Buky's training and credibility.

Considering the totality of the circumstances, including the officers' prior knowledge of Defendant, the presence of numerous air fresheners, Defendant's unusual behavior, and Buky's positive alert, the Court concludes that probable cause existed to search Defendant's vehicle for evidence of narcotics possession and/or trafficking.

**C. Suppression of Firearm**

Defendant also challenges the continued search of the vehicle following his arrest, and he moves to suppress the firearm revealed during that search. The Government contends that the search was a valid inventory search. Alternatively, the Government maintains that probable cause existed to search the vehicle for a firearm.

An inventory search of a police-impounded automobile is a recognized exception to the warrant requirement. *See Colorado v. Bertine*, 479 U.S. 367 (1987); *South Dakota v. Opperman*, 428 U.S. 364 (1976). "[A] valid inventory search may include the engine compartment of a vehicle." *United States v. Lumpkin*, 159 F.3d 983, 988 (6th Cir. 1998); *see also United States v. Pappas*, 452 F.3d 767, 772 (8th Cir. 2006).

The Government has submitted evidence that Ypsilanti police officers search under the hood of a vehicle during the course of a routine impoundment search. The Department's impounded-vehicle checklist includes "engine", "battery", "carburetor", and "alternator", as items that must be examined, all of which are typically located under a vehicle's hood. *See* Gov.'s Ex. B. While Defendant argues that the officers were searching for a firearm rather than conducting an inventory search, "the fact that an officer suspects that contraband may be found does not defeat an otherwise

8

proper inventory search." *See Lumpkin*, 159 F.3d at 987. Therefore, the inventory search was proper.

### D. Suppression of Statements

In his motion, Defendant also requests that the Court suppress statements based on the fruit-of-the-poisonous-tree doctrine. *See, e.g., Wong Sun v. United States*, 371 U.S. 471 (1963). Defendant, however, has not identified the statements to which he referred, and he did not present this argument at the evidentiary hearing. In any event, considering that the "tree" is not poisonous, any statements cannot be challenged as "fruit" under that doctrine. Defendant has not suggested that any statements were otherwise procured in violation of the Fourth Amendment.

### IV.  CONCLUSION

Accordingly, and for the stated reasons, IT IS HEREBY ORDERED that Defendant's motion to suppress evidence and/or dismiss [dkt 12] is DENIED.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: January 27, 2010

CERTIFICATE OF SERVICE

    The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on January 27, 2010.

                                        S/Marie E. Verlinde
                                        Case Manager
                                        (810) 984-3290